IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JAMES MCDANIEL and                                                    PLAINTIFF
DEBRA MCDANIEL

v.                                        NO.  4:13CV00217 BSM

NATIONSTAR MORTGAGE, LLC,                                          DEFENDANTS
WILSON & ASSOCIATES, PLLC,
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., BANK OF AMERICA, N.A.,
and QUICKEN LOANS, INC.

FIRST AMENDED COMPLAINT FOR
DELCARATORY JUDGMENT, AND DAMAGES

COMES NOW the Plaintiffs, James and Debra McDaniel, by and through their attorney,

Mickey Stevens, and for their First Amended Complaint against Defendants, states:

1.      This action concerns the real property located at 737 Trevino Dr., Maumelle,

Pulaski County, Arkansas (hereinafter "the property"), more particularly described as:

Lot 4, Country Club Villas Addition to Maumelle, Pulaski County, Arkansas, now
in the City of Maumelle, Arkansas.

2.      Plaintiffs initially brought this action on March 18, 2013 seeking a judicial

declaration that the securitization on their home was illegal or fundamentally flawed and the

statutory foreclosure proceeding initiated by Nationstar Mortgage LLC was illegal.  Plaintiffs

also sought an injunction to prevent Nationstar from selling the property.  The circuit court

denied the injunction.

3.      Defendants Mortgage Electronic Registration Systems, Inc. ("MERS") and Bank

of America removed this matter to federal court on April 11, 2013.

4.      Plaintiffs now bring this Amended Complaint seeking damages against the

1

Defendants for Wrongful Foreclosure, Quiet Title, violations of the Arkansas Deceptive and Unconscionable Trade Practices Act, Arkansas Code Annotated § 4-88-107, *et. seq*, and Civil Conspiracy.

## THE PARTIES

5.      The Plaintiffs, James and Debra McDaniel are residents of Pulaski County, Arkansas and are the owners of the real property that is the subject of this suit.

6.      Nationstar Mortgage, LLC ("Nationstar") is a Limited Liability Company organized under the laws of the State of Delaware which regularly conducts business involving mortgage loans in Arkansas.

7.      Wilson & Associates, PLLC, ("Wilson) is a Professional Limited Liability Corporation organized under the laws of the State of Arkansas which performs third-party debt collection services and foreclosure related transactions.   Wilson's primary place of business is located in Little Rock, Pulaski County, Arkansas.

8.      Mortgage Electronic Registration Systems, Inc. ("MERS") is a subsidiary of MERSCORP, Inc., a Delaware corporation with its corporate headquarters located in Wilmington, Delaware.

9.      Bank of America, N.A., ("Bank of America") is upon information and belief, a nationally chartered bank with multiple business locations in Arkansas.

10.     Quicken Loans, Inc. ("Quicken") is a corporation organized under the laws of the State of Michigan which originates mortgage loans in Arkansas and other states.

## JURISDICTION AND VENUE

11.     Defendants removed this case to federal court based on federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332. .

**12.**     The Court may assume supplemental jurisdiction of Plaintiffs' state law claims pursuant to 28 U.S.C. §/ 1367.

**13.**     Pursuant to 28 U.S.C. § 1391, venue is proper in this district because the corporate Defendants conducts substantial, systematic, and continuous business activity in this district, and subject to personal jurisdiction in this district, and acts underlying this lawsuit occurred in this district.  Additionally, the Defendants  have purposely availed themselves of themselves of the privilege of conducting business in the State of Arkansas and have invoked the benefits and protections of the state's laws.

**14.**     The amount in controversy exceeds the sum or value of $75,000 exclusive of costs and interest.

## FACTUAL ALLEGATIONS

**15.**     MERS is an entity created by several large participants in the mortgage industry to track changes in the ownership of the beneficial and servicing interests of mortgage loans as they are bought and sold among MERS members or others.  Simultaneously, MERS purports to act as the "mortgagee" of record in a "nominee" capacity for the beneficial owners of these loans.

**16.**     During the lifetime of a mortgage, the beneficial ownership interest or servicing rights may be transferred among MERS members, but these assignments are never publicly recorded.  Instead, these assignments are tracked electronically in MERS's private system.  The mortgagor is notified of transfers of servicing rights but not necessarily of assignments of the beneficial interest in the mortgage.

**17.**     MERS does not record transfers among its members in violation of Arkansas' mandatory recording statute, Ark. Code Ann. § 18-40-101:

> All mortgages of real estate shall be proven or acknowledged in the same manner that deeds for conveyance of real estate are required by law to be proven or acknowledged. When so prove or acknowledged they shall be recorded in the counties in which the lands lie.

Ark. Code Ann. § 18-40-109(a)(1)-(2) also requires that transfers of mortgages be recorded:

> **(1)** No provision contained in §§ 18-40-103, 18-40-106, 18-40-107, and this section shall prevent any mortgagee, trustee, agent of owner of record, or the owner of record, transferee, or assignee appearing of record, from selling, transferring, or assigning any deed of trust, mortgage, or vendor's lien retained in deed by separate instrument duly acknowledged **and recorded**.

> **(2)** At the time of recording any separate instrument **transferring any mortgage**, deed of trust, vendor's lien, or lien retained in deed, note, bond, or other instrument, the clerk and ex officio recorder in the office in which the **transfer or assignment shall appear shall note on the margin of the record of the original mortgage**, deed of trust, or deed retaining vendor's lien **a memorandum noting that the lien contained in the instrument, and the notes or other instruments evidenced thereby, have been transferred, to whom transferred, the date of the transfer, and the book and page where the separate instrument and transfer may be found.**

(emphasis added).

18.    MERS itself does not automatically track the transfers of all beneficial ownership rights of the mortgages registered in its system. Information in the MERS system is only updated if MERS members choose to do so. In fact, MERS admits that it doesn't expect its members to update records regarding changes in loan ownership. Christopher L. Peterson, *Two Faces: Demystifying the Mortgage Electronic Registration System's Land Title Theory*, 53 Wm. & Mary L. Rev. 111 (2011). In fact, the MERS system displays a disclaimer that states:

> MERS makes no representations or warranties regarding the accuracy or reliability of the information provided. MERS disclaims responsibility or liability for errors, omissions, and the accuracy of any information provided. MERS does not input any of the information found on the MERS® System, but rather the MERS Members have that responsibility regarding mortgage loans in which they hold an interest. Users of this information have the responsibility to verify the accuracy, currency and completeness of the information. **The information does not constitute the official legal record and is for informational purposes only**. The servicer listed should be contacted for further information.

(emphasis added).

**19.**     In a deposition conducted on April 7, 2010, the Secretary and Treasurer of MERS, William C. Hultman, admitted that MERS has no employees.  *Bank of New York v. Ukpe*, F-10209-08, Sup.Ct. New Jersey, Chancery Div., Atlantic County.

**20.**     MERS policy allows any employee who works for a lender or third-party with a contractual relationship to the lender to sign an assignment as an officer of MERS.   This practice is what has commonly become known as "robo-signing."

**21.**     The MERS system is a sham created with the intent to wrongfully bypass the counties' recording requirements and avoid the payment of recording fees.

**22.**     A consent decree entered by MERS on April 12, 2011 includes findings of fact stating that MERS failed to exercise appropriate oversight, management supervision and corporate governance, and failed to devote adequate financial, staffing, training, and legal resources to ensure proper administration and delivery of services to its members.  The consent decree further states that MERS failed to establish and maintain adequate internal controls, policies and procedures, compliance risk management, and internal audit and reporting requirements with respect to the administration and delivery of services to its members.

**23.**     On September 25, 2009, the President and CEO of MERSCORP, R. K. Arnold, admitted that MERS does not have a beneficial interest in any loan, does not loan money and does not suffer a default if monies are not paid.

**24.**     The Fannie Mae Single Family 2012 Servicing Guide, pt I, ch. 4, § 408, p. 104-31 states that "MERS will have no beneficial interest in the mortgage, even if it is names as the nominee for the beneficiary in the security instrument." *See also In re Fitch*, 2009 WL 1514501 (Bankr. N.D. Ohio 2009 (summarizing MERS witness's testimony to effect that MERS never

owns or holds promissory notes).

25.     In a publication entitled "MERS Recommended Foreclosure Procedures," MERS admits that it "does not create or transfer beneficial interests in mortgage loans or create electronic assignments of the mortgage."  This document further states that "Promissory notes still require an endorsement and delivery from the current owner to the next owner in order to change the beneficial ownership of a mortgage loan."

26.     The structure of MERS transactions violates the fundamental notion that the note and mortgage cannot be separated.

27.      In February of 2013, Bank of America entered a Consent Order with the Comptroller of the Currency that required that Bank of America take certain actions to prevent foreclosures and afford more protections for borrowers facing foreclosure.  The assignment from Bank of America to Nationstar occurred in January of 2013, just prior to the signing of the Amended Order.  The timing indicates that the assignment to Nationstar was an attempt by Bank of America to avoid compliance with the Amended Consent Order.   Bank of America transferred the Mortgage specifically so that Nationstar could foreclose without having to comply with the terms of the Consent Order.

28.     At the time Bank of America transferred the Mortgage to Nationstar, it would have been aware that the property would be foreclosed.  Furthermore, Bank of America should have been aware that it was not transferring a legally valid interest to Nationstar and that this would result in a wrongful foreclosure.

29.     In November 2005, Plaintiffs refinanced their home through Quicken Loans, Inc. Pursuant to this transaction, Plaintiffs executed a Note  *(Exhibit A)* and Mortgage *(Exhibit B)*.

30.     Both the Note and Mortgage designate Quicken as the "Lender" and the Mortgage

shows Quicken as the "lien holder." MERS is not mentioned in the Note and has no interest in the Note.

31. The Mortgage purports to designate MERS as the "mortgagee" and states that MERS "is acting solely as a nominee for Lender and Lender's successors and assigns."

32. Ark. Code Ann. § 18-50-101 defines "Mortgagee:"

Mortgagee" means the person holding an interest in real property as security for the performance of an obligation secured by a mortgage or his or her attorney-in-fact appointed pursuant to this chapter;

Because MERS does not hold an interest in the underlying obligation, it cannot be a Mortgagee as defined by the Arkansas Statutory Foreclosure law.

33. On February 15, 2012, an "Assignment of Mortgage" was filed with the Pulaski County Clerk in which MERS purported to assign the Mortgage to Bank of America. (*Exhibit C*).

34. The Assignment from MERS to Bank of America was signed by "Rene Rosales." Upon information and belief, Rene Rosales is actually an employee of either Bank of America or its subsidiary, CoreLogic, and her name is listed on several websites that list alleged "robo-signers." In a origi order dated April 13, 2011, Defendants MERS and Bank of America signed a consent order agreeing to cease and desist in the use of "robo-signers."

35. On January 3, 2013, an "Assignment of Mortgage" was filed with the Pulaski County Clerk in which Bank of America purported to assign the Mortgage to Nationstar. (*Exhibit D*).

36. The records of the Pulaski County Clerk contain no record of an assignment of either the Note or the Mortgage from Quicken to either MERS, Bank of America, or Nationstar.

37. While the Mortgage purports to designate MERS as the "mortgagee," MERS did

7

not collect or distribute payments, pay escrow items, hold client funds on deposit, pay insurance or taxes, or oversee or administer the loan in any way.  MERS has no right to collect money on the Note or to receive any proceeds of value from any foreclosure.   Under similar circumstances, the Arkansas Supreme Court held that MERS had no authority to act as an agent for the lender and held no property interest in the mortgaged property.  *Mortgage Elec. Registration Sys. V. Southwest Homes of Ark.*, 2009 Ark. 152 (2009).  Additionally, in *Southwest Homes*, the court held that, where there was no recorded document showing a transfer to another lender, the original lender was still considered to be the holder of the Note and that MERS had no authority to exercise the lender's rights. *Id.*  The court held that allowing MERS to act in the place of an unrecorded lender "would wreak havoc on notice in this state." *Id.*

38.     The assignment from MERS to Bank of America purports to transfer the Note as well as the Mortgage.  However, there is nothing in the Mortgage, Note, or other recorded documents to show that the Note was ever assigned to MERS or that MERS had any authority to assign the Note to Bank of America.   Nothing in the Mortgage permits the mortgagee to take any action with respct to the debt, or provide any interest therin.

39.     Assignment of a Mortgage does not assign the Note.  The Mortgage follows the Note but the reverse is not true.  Assignment of the Note carries with it assignment of the Mortgage, but an assignment of a Mortgage without the Note is a nullity.  *Bryan v. Easton Tire Co.*, 262 Ark. 731 (1978).  The Mortgage is merely an incident and accessory to the Note. The attempt to name MERS as the "mortgagee" without assigning any interest in the Note did not vest any beneficial interest in the Note to MERS and did not give MERS the ability to assign the Note to anyone else.  There is no indication that the original holder of the Note, Quicken Loans, Inc., negotiated, indorsed, or transferred the note to anyone.

8

**40.** Furthermore, the separation of the Mortgage from the Note invalidates the security interest. Thus, the holder of the Note no longer has a security interest in the real property that is the subject of this action.

**41.** Appellate courts in Kansas, Maine, Vermont, New York, North Carolina and Oklahoma, among other states, have refused to allow MERS or its assignee to assert rights against the mortgagor because it did not hold the note secured by the mortgage. *See, e.g., Landmark Nat. Bank v. Kesler*,216 P.3d 158 (Kan. 2009) *Mortgage Electronic Registration Systems, Inc. v. Saunders,* 2 A.3d 289 (Me. 2010); *LNV Corp. v. Madison Real Estate, LLC*, 2010 N.Y. Misc. LEXIS 5937 (N.Y. 2010); *In re Foreclosure of a Deed of Trust Executed by Hannia M. Adams & Clayton Adams*, 693 S.E.2d 705 (N.C.App. 2010)*; CPT Asset Backed Certificats, Series 2004-EC1 v Cin Kham*, 278 P.3d 586 (OK. 2012)(this Oklahoma case provides an excellent analysis of the issue of whether an assignee of MERS has the right to enforce a note in circumstances identical to the present case); *U.S. Bank National Association v. Kimball,* 27 A.3d 1087, 75 UCC Rep.Serv.2d 100, 2011 VT 81 (VT 2011).

**42.** Courts in several states have held that MERS cannot enforce, transfer, or assign any rights in the underlying note. *See, e.g., Weingarter v. Chase Home Finance, LLC*, 2010 WL 1006708 (D.Nev. 2010); *In re Thomas*, 447 B.R. 402 (Bankr. D. Mass. 2011); *In re Lippold*, 457 B.R. 293 (Bankr. S.D.N.Y. 2011); *In re Weisband*, 427 B.R. 13 (Bankr. D. Ariz. 2010).

**43.** Because the Note was never assigned to MERS and MERS was never a holder of the Note, the attempt by MERS to assign the Mortgage and Note to Bank of America was ineffective. Likewise, because there was no valid assignment of the Note and Mortgage to Bank of America, the attempted assignment to Nationstar was also ineffective. Because Nationstar is not the holder of the note and does not otherwise have the right to enforce the Note, Nationstar

cannot foreclose on the property.   Pursuant to   Ark. Code Ann. § 18-50-102(2)(B)   only the "holder or the mortgage loan servicer for the holder of a note" may foreclose under the Arkansas Statutory Foreclosure law.

44.     On January 23, 2013, a "Limited Power of Attorney" executed by Nationstar was filed with the Pulaski County Clerk *(Exhibit E)*.   In this document, Nationstar purports to be the "holder of the beneficial interest, or acting with the authority of the holder of said Mortgage and Mortgage Note."     This Limited Power of Attorney granted to Willson by Nationstar is ineffective as to granting Wilson any authority to foreclose because Nationstar cannot grant a power that it does not have.

45.     Per Ark. Code Ann. § 4-3-109, a promise or order is only payable to bearer if it states that it is payable to bearer or to the order of bearer, does not state payee, or that it is payable to the order of cash or otherwise indicates that it is not payable to an identified person. The Note involved in this matter states that it is payable to Quicken Loans, Inc.  Thus, the Note is not payable to bearer.  The Note has not been indorsed by Quicken and there are no records indicating the Note has been transferred from Quicken to anyone**.**

46.     The Note does not meet the requirements of a Negotiable Instrument under Ark. Code Ann. § 4-3-104 because it is not payable to bearer or order.   Because the Note is non-negotiable, Nationstar must prove how it acquired the Note and that it has the right to enforce the Note.

47.     Neither MERS, Bank of America, nor Nationstar took the Note for value.  The Note was in default at the time MERS purported to transfer it to Bank of America and when Bank of America purported to transfer it to Nationstar.  Nationstar is not a holder in due course or a non-holder in possession with the right to enforce the Note and does not otherwise have any

right to enforce the Note.

**48.**     To enforce a note, a creditor must produce the original or satisfy requirements of lost instrument.  *McCay v. Capital Resources Co.*, 327 Ark. 737 (1997).  "Arkansas case law dating as far back as 1842 has required a creditor to prove the debt by admitting the original promissory note into evidence."  *Id.*     If a duplicate is allowed, borrowers could be subject to double liability.   Nationstar has not and cannot produce the original note**.**

**49.**     Neither Nationstar nor any other Defendant can show a complete and accurate chain of title.

**50.**     Neither Nationstar nor any other Defendant can show an ownership interest in the Note.

**51.**     Arkansas Code Annotated § 18-50-103(2)(A)(ii)(a) requires that "[a] true and correct copy of the note **with all required endorsements . . . .**" be provided to the borrower prior to a statutory foreclosure.

**52.**     Arkansas Code Annotated § 18-50-103(2)(A)(ii)(b) requires that, prior to a nonjudicial foreclosure, the lender must provide the borrower with the physical location of the original note.

**53.**     The copy of the Note provided by borrowers did not have any endorsements.

**54.**     Nationstar never provided Plaintiffs with the physical location of the original Note.

**55.**     Plaintiffs' property was sold on March 19, 2013.

## COUNT I

### Wrongful Foreclosure

**56.**     Plaintiff incorporates by reference and realleges each and every allegation

contained above, as though fully set forth herein.

57.     Prior to the foreclosure of Plaintiff's property, there was no indication that Quicken, the original holder of the Note, ever transferred, indorsed, or assigned the Note to MERS, Bank of America, Nationstar, or anyone else.

58.     The naming of  MERS as a "Mortgagee" without any beneficial interest in the Note separated the Note and Mortgage and invalidated the security interest.

59.     The purported assignments of the Note and Mortgage from MERS to Bank of America and from Bank of America to Nationstar were ineffective because MERS held no interest in the Note and the security interest no longer existed.

60.     Nationstar was not a holder of the Note and has no right otherwise to enforce the Note.

61.     Nationstar was not a party authorized to foreclose a mortgage as defined by Ark. Code Ann. § 18-50-102.

62.     Ark. Code Ann. § 18-50-104 requires that the mortgagee, trustee, or beneficiary file a Notice of Default and Intention to Sell with the county recorder.  Because Nationstar is not the mortgagee, trustee, or beneficiary, the Notice it filed is ineffective and does not meet the requirements of the statute. *(Exhibit F)*.

63.     The Acknowledgements on both purported assignments in the records do not comply with the requirements of Ark. Code Ann. § 16-47-207 in that they do not include a statement acknowledging the signer's position with the corporation.

64.     Defendants have not complied with the notice requirements of Ark. Code Ann. § 18-50-103(2)(A)(ii). Nationstar failed to provide an endorsed copy of the Note and failed to provide the physical location of the Note to Plaintiffs.   Nationstar failed to provide other

information to Plaintiffs as required by Arkansas Code Annotated § 18-50-103(2)(A)(ii).

65.     Plaintiffs were not notified by Defendants that they do not meet the criteria for loan modification or forbearance as required by Ark. Code Ann. § 18-50-104

66.     Neither Nationstar nor any other Defendant can show that the Mortgage has not been satisfied or otherwise extinguished by payment in full.

67.     A judicial determination is appropriate to determine the parties rights and duties with regards to the property loan and foreclosure.  A declaration of rights and duties of the parties by the court is necessary to determine the actual status and validity of the loan and any right, duties, and obligations to be enforced.

68.     Plaintiffs have been damaged by the loss of their property and the loss of significant equity in the property.

69.     All named Defendants conspired to initiate a wrongful foreclosure on Plaintiffs' property and committed acts in furtherance of this conspiracy.

## COUNT II

## Quiet Title

70.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

71.     MERS was designated as the "Mortgagee" in the Mortgage document but had no interest in the underlying debt obligation.

72.     The separation of the Note from the Mortgage invalidated the security interest in the property.

73.     Plaintiffs therefore seek a declaration that the Mortgage was invalid and void, that the foreclosure sale be set aside, and that title to the subject property be vested in Plaintiffs

alone and a declaration that none of the Defendants herein have any mortgage, security interest, estate, right, or title in the subject property and that all Defendants named herein be enjoined from asserting any estate, right, title, or interest in the subject property adverse to Plaintiffs herein.

**COUNT III**

**Violation of the Federal Fair Debt Collection Practice Act**
**15 U.S.C. § 1601,** *et. seq.*
**Violation of the Arkansas Fair Debt Collection Practices Act**
**Ark. Code Ann. § 17-24-501,** *et. seq.*

**74.**     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

**75.**     Pursuant to both the federal and the Arkansas Fair Debt Collection Practices Acts, Nationstar is a "debt collector."

**76.**     Nationstar has violated both the federal and the Arkansas FDCPAs by generally engaging in false, deceptive, or misleading representations or means of collecting a debt; by falsely representing the "character, amount, or legal status" of the debot owed; by threatening to sell property they are not legally entitled to sell; by threatening to take action that cannot legally be taken; by communicating to the general public by virtue of posting a notice of default at the Pulaski County Courthouse; by generally engaging in the use of unfair or unconscionable means to collect or attempt to collect a debt.

**77.**     The other named Defendants conspired with Nationstar to violate the federal and state FDCPAs and committed acts in furtherance of this conspiracy.

**78.**     Pursuant to 15 U.S.C. § 1692k, Plaintiffs are entitled to actual damages, additional statutory damages in the amount of $1,000.00, attorneys fees and costs.

**79.**      Pursuant to Ark. Code Ann. § 17-24-512, Plaintiffs are entitled to actual

damamges, additional statutory damages in the amount of $1000.00, attorneys fees and costs.

## COUNT IV

**Violations of the Arkansas Unconscionable and  Deceptive Trade Practices Act
Ark. Code Ann. § 4-88-101, *et. seq.***

**80.**      Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

**81.**      The Arkansas Deceptive Trade Practices Act, Arkansas Code Annotated § 4-88-101, *et. seq.*,   prohibits any "unconscionable, false, or deceptive act or practice in business, commerce, or trade."  Ark. Code Ann. § 4-88-107(a)(10).

**82.**       The actions of MERS and Bank of America, including attempting to assign a non-existent security interest to Nationstar intending and knowing that Nationstar would initiage a wrongful foreclosure against Plaintiffs is an unconscionable and deceptive act.

**83.**      The actions of Bank of America, including attempting to transfer the Mortgage to Nationstar in an attempt to avoid compliance with the Consent Order is an unconscionable and deceptive act.

**84.**      The initiation of a foreclosure by Nationstar when it held no valid security interest in the property is an unconscionable and deceptive act.

**85.**      Arkansas Code Annotated § 4-88-113(f) provides that"[a]ny person who suffers acdtual damage or injury as a result of an offense or violation" of this act "has a cause of action to recover actual damages" and " reasonable attorney's fees."

**86.**      Plaintiffs have been damaged by the loss of their property and the loss of significant equity in their home.

## COUNT V

## Civil Conspiracy

**87.**     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

**88.**     All named Defendants combined to accomplish the unlawful purposes of initiating a wrongful foreclosure of Plaintiff's property, violating both the state and federal Fair Debt Collection Practices Acts, and violating the Arkansas Deceptive and Unconscionable Trade Practices Act.

**89.**     Each and every named Defendant committed acts in furtherance of this conspiracy.

**90.**     Plaintiffs have been damaged by the acts committed by Defendants in furtherance of this conspiracy.

**91.**     The actions of the Defendants were willful and malicious and Plaintiffs are entitled to actual, compensatory, and punitive damages.

## DEMAND FOR JURY TRIAL

**92.**     Plaintiffs demand a jury trial on all issue so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs, pray this honorable Court enter judgment against the Defendants as follows:

a. a declaration that Nationstar Mortgage, LLC, was not the holder of the Note, had no right to enforce the Note and was not a party entitled to foreclose on the property and setting aside the foreclosure sale of Plaintiffs' property;

b. a declaration that the Mortgage is invalid and void and that title to the subject

property is vested in Plaintiffs alone and that none of the Defendants herein have any

mortgage, security interest, estate, right, or title in the subject property and that all

Defendants named herein be enjoined from asserting any estate, right, title, or interest

in the subject property adverse to Plaintiffs herein;

c.   award of actual and statutory damages pursuant to the federal and Arkansas Fair Debt

Collection Practices Acts;

d.   award of Plaintiffs' actual and compsnatory damages, to be proven at trial, for the

wrongful foreclosure, for violations of the Arkansas Deceptive and Unconscionable

Trade Practices Act;

e.   award of punitive damages as appropriate;

f.   awared ofattorneys fees, costs, and interest; and

g.   for all other and further relief as may be just and proper.

   Plaintiffs demand strict proof of the amounts outstanding, transfers and assignment,

ownership of the Note and Mortgage, notices, and compliance with all statutory requirements.

Respectfully submitted,

_____
Mickey Stevens,   Ark. Bar No. 2012141
Attorney for Plaintiff
P.O. Box 2165
Benton, AR 72018
T:  501-303-6668
F:  877-338-6063
Stevens_mickey@yahoo.com

## CERTIFICATE OF SERVICE

I, Mickey Stevens, do hereby certify that on May 30, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

Judy Simmons Henry
jhenry@wlj.com

Johnathan D. Horton
jhorton@wlj.com

Samuel High
shigh@wilson-assoc.com

_____
Mickey Stevens